IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
FEB 1 6 2018
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

DCK WORLD WIDE, LLC,
Plaintiff,

-vs-

PACIFICA RIVERPLACE, LP,
Defendant.

CAUSE NO.:
A-16-CV-00666-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff DCK World Wide, LLC (DCK)'s Opposed Motion for Leave to File Out of Time Plaintiff's Response to Defendant's Motion to Compel Arbitration [#21], Defendant Pacifica Riverplace, LP (Pacifica)'s Response [#23] in opposition, and DCK's Reply [#31] in support; Pacifica's Motion for Entry of Default [#24]; Pacifica's Motion to Confirm Arbitration Award and Enter Judgment [#43], and DCK's Response [#49] in opposition; as well as DCK's Motion to Vacate Arbitration Award [#48], and Pacifica's Response [#51] in opposition. Having considered the case file and the applicable law, the Court enters the following opinion and orders.

### Background

This case relates to the arbitration of a dispute involving construction of a Residence Inn Hotel owned by Pacifica. The property owner, Pacifica, hired Summit dck, LLC (Summit) to perform construction on the hotel. *See* Mot. Prelim. Inj. [#4-3] Ex. 2 (Contract). Summit hired JA Plumbing, Inc. (JA Plumbing) as a subcontractor to provide plumbing work for the project. *See* Mot. Vacate [#48] at 2. Citing unpaid bills, JA Plumbing sued Pacifica and Summit on

August 25, 2015 in the 53rd Judicial District state court in Travis County. *Id.* Pacifica filed a cross-claim against Summit and sought leave to join Summit's indirect corporate parent, DCK. *Id.* Before the Court addressed Pacifica's request for leave to add DCK, Summit, JA Plumbing, and Pacifica agreed to arbitrate their disputes, and the state court issued an order to abate the proceedings pending the outcome of arbitration. *See id.;* Mot. Prelim. Inj. [#4-7] Ex. 6 (Apr. 13, 2016 Agreed Order). Pacifica sought to add DCK as a party to the arbitration proceedings, and DCK objected. *See* Mot. Vacate [#48] at 2–3. DCK filed this lawsuit on June 8, 2016, requesting declaratory and injunctive relief against the arbitration proceedings. *See* Compl. [#1].

Initially, DCK requested a preliminary injunction to enjoin Pacifica from pursuing claims against DCK in the arbitration. *See* Mot. Prelim. Inj. [#4]. DCK argued the arbitrator lacked jurisdiction to determine whether DCK is bound by the Contract's arbitration provision. *See id.* at 6. Before the Court ruled on DCK's request for a preliminary injunction, the arbitrator issued her July 18, 2016 ruling denying DCK's objections to arbitrability, effectively compelling DCK to the arbitration. *See* Supplement [#20-1] Ex. A (Arbitrator Ruling). Shortly thereafter, this Court denied DCK's request for a preliminary injunction for failing to meet its burden for the requested relief. *See* Order of Jul. 29, 2016 [#29]. The Court granted the parties' joint motion to stay the case pending the outcome of arbitration. *See* Order of Sep. 2, 2016 [#33]. The final arbitration hearing was conducted on July 10, 2017, and the arbitrator issued a final award on October 25, 2017. *See* Mot. Confirm Arbitration [#43-2] Ex. B (Final Award).

At issue now is the effect of the Final Award. Pacifica requests this Court confirm the Final Award and enter judgment in its favor. DCK asserts the arbitrator exceeded her powers, and therefore the Final Award should be vacated. The parties' motions are ripe and ready for consideration.

## Analysis

### I. Preliminary Matters

Pacifica's July 5, 2016 response to DCK's request for a preliminary injunction also included a motion to compel arbitration and stay these proceedings pending the outcome of the arbitration. *See* Resp. [#15]. Sixteen days later, DCK sought leave to file a response to Pacifica's motion to compel arbitration. *See* Mot. Leave [#21]. These motions are moot in light of the Court's order staying these proceedings for arbitration and the arbitrator's Final Award. *See* Order of Sep. 2, 2016 [#32]; Final Award.

Pacifica also requested entry of default for its counterclaims against DCK on July 25, 2016. *See* Mot. Default [#24]. DCK filed an answer to Pacifica's counterclaims later the same day. Although DCK's answer was untimely, a default judgment is not warranted.

### II. Motions on Arbitrator's Final Award

The parties disagree on the enforceability of the arbitrator's Final Award. Pacifica contends the Final Award is enforceable and seeks to confirm the award under § 9 of the Federal Arbitration Act (FAA). *See* Mot. Confirm [#43] at 4–7. DCK asserts the Final Award must be vacated because the arbitrator exceeded her powers in adjudicating the arbitrability of the parties' dispute. *See* Mot. Vacate [#48] at 4–7. Under the correct law, DCK argues, the arbitrator should have deferred the issue of arbitrability to this Court since DCK did not agree to delegate arbitrability to the arbitrator. *Id.*

Below, the Court addresses the issues of arbitrability, DCK's obligation to arbitrate, and confirmation of the Final Award.

### A. Arbitrability

As indicated above, this case involves the issue of arbitrability: whether non-signatory DCK should be bound by the arbitration provision in the Contract. The threshold issue of arbitrability is for the courts to decide unless there is clear and unmistakable evidence the parties agreed to submit the issue of arbitrability to the arbitrator. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

Here, the arbitrator concluded she had the authority to decide arbitrability under the terms of the Contract. Arbitrator Ruling at 5–8. Because DCK assumed the Contract and all obligations and covenants therein, the arbitrator reasoned, DCK "clearly and unmistakably agreed to arbitrate." *Id.* at 8.

There is, however, an important distinction between whether DCK is required to arbitrate and whether DCK agreed to arbitrate the issue of arbitrability. In this case, Summit (DCK's indirect subsidiary) and Pacifica agreed to arbitrate disputes in the Contract. Thus, even assuming Summit and Pacifica agreed to submit the gateway issue of arbitrability to the arbitrator, DCK—a non-signatory to the Contract—cannot be said to have agreed to the same. DCK may be bound to submit to arbitration under one of the legal theories discussed below, but such a determination against a non-signatory is generally for the courts to make. *See First Options*, 514 U.S. at 943–47 (holding a court should decide whether the arbitration contract bound non-signatories to the agreement); *see also Elgohary v. Herrera*, 405 S.W.3d 785, 793 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("We agree with the Fifth Circuit, that evidence of a successor, assigns, or affiliates clause in the contract between the signatories is not evidence that the non-signatory intended that an arbitrator decide whether the non-signatory was bound under the contract's provisions about successors."); *Roe v. Ladymon*, 318 S.W.3d 502, 517 (Tex.

4

App.—Dallas 2010, no pet.) (articulating that the relevant inquiry is whether "the parties to the dispute before the courts . . . agreed to arbitrate the issue of arbitrability, not the parties to the contract containing the arbitration clause").

The Court therefore finds good reason to perform an independent review of the issue of arbitrability. *See First Options* at 947 (holding the question of arbitrability is subject to "independent review by the courts" when a party did not clearly agree to submit the question of arbitrability to arbitration). The parties submitted briefing and evidence on this issue at the Court's request. *See* Order of Jan. 3, 2018 [#57]; Brs. [## 59, 60, 111, 113].

### B. DCK's Obligation to Arbitrate

After performing an independent review, the Court agrees with the arbitrator's conclusion that DCK should be bound by the arbitration provision in the Contract. Courts apply "background principles" of state contract law in determining whether a party is bound to arbitration. *See Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014). Texas law[1] recognizes six different theories for binding a non-signatory to an agreement: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, (5) estoppel, and (6) third-party beneficiary. *Elgohary*, 405 S.W.3d at 793. As explained below, DCK is bound by the arbitration agreement in the Contract under the theories of implied assumption and direct-benefits estoppel.

#### 1. Implied Assumption

"Generally, a party cannot be held liable under another party's contract without an express or implied assumption of the obligations of that contract." *NextEra Retail of Texas, LP v. Inv'rs Warranty of Am., Inc.*, 418 S.W.3d 222, 226 (Tex. App.—Houston [1st Dist.] 2013, pet.

---

[1] Both parties apply Texas law on these points, the Contract is governed by Texas law, and the underlying disputed work occurred in Texas. *See* DCK Br. [#59]; Pacifica Br. [#60]; Contract at 1, § 13.1.

5

denied). Courts may find implied assumption on equitable grounds, although "courts will not lightly imply additional covenants enlarging the terms of a contract." *Id.* at 227–28. Implied assumption of obligations on equitable grounds is appropriate "when the benefit received by the assignee is so entwined with the burden imposed by the assignor's contract that the assignee is estopped from denying assumption and the assignee would otherwise be unjustly enriched." *Jones v. Cooper Indus., Inc.*, 938 S.W.2d 118, 125 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (citing *Lone Star Gas Co., a Div. of Enserch Corp. v. Mexia Oil & Gas, Inc.*, 833 S.W.2d 199, 203 (Tex. App.—Dallas 1992, no writ))

Within months of executing the Contract, Summit began falling behind on payments to subcontractors and vendors. *See* Attach. [#77-2] P-48 (internal Summit email acknowledging "extremely slow" payment of subcontractors and vendors despite "on-time" payments from Pacifica). Pacifica raised this issue directly with Summit at the end of 2013. *See e.g., Id;* Attach. [#77-4] P-55 (Pacifica email to Summit requesting evidence of payment). Summit's financial troubles worsened in 2014, and various liens were filed by vendors and subcontractors for unpaid invoices. Attach. [#78-1] P-60; Attach. [#78-2] P-66; Attach. [#84-2] P-78; Attach. [#85-1] P-85; Attach. [#88-1] P-92. According to internal Summit emails, Pacifica and its lender began withholding payments because of the liens and unpaid invoices. Attach. [#84-2] P-78; Attach. [#85-2] P-86. Pacifica continued to express frustrations to Summit. Attach. [#88-1] P-92.

It was during these troubled times that DCK—Summit's indirect parent—emerged as a party to the Pacifica construction project. The DCK name was used in communications with Pacifica and other parties. *See* Attach. [#97-1] P-127, Attach. [#100-1] P-137. Senior project manager, Chris Butler, negotiated with subcontractor JA Plumbing under the DCK name, in addition to signing working hour logs on behalf of DCK. Attach. [#95-4] P-125; Attach. [#99-2]

6

P-132; Attach. [#101-1] P-144 (specifying "DCK" in the approval signatures). Email signature blocks switched from Summit to DCK. *Compare* [##93, 94] P-106–08 ("Summit dck"), *with* [##95, 103, 105] P-113, P-116, P-125, P-132, P-149, P-175 ("dck worldwide, LLC"). Project documentation also began to bear the DCK name. *See, e.g.,* Attach. [#96-1] P-126 (Look Ahead Schedule); Attach. [#103-6] P-162 (Monthly Management Report); Attach. [#105-3] P-175 (Project Schedule). Various individuals represented themselves in construction meetings as representing DCK, not Summit. *See* Attach. [#103-2] P-146 (listing attendees for construction meetings as representing "dck Worldwide"). Most notably, DCK described its own role as having "taken over" the construction project from Summit. *See* Attach. [#106-2] P-177 (Butler email under DCK name stating "this is a Pacifica Hotels project that was originally started by Summit Builders and taken over by dck worldwide"). In essence, DCK outwardly represented to Pacifica, subcontractors, and vendors that it had assumed Summit's role in the construction project.

DCK knew of the Contract and received benefits under the same. After DCK initiated its involvement with the project, Pacifica restarted payments, subcontractors continued work on the project, and liens were released. Attach. [#93-2] P-106; Attach. [#101-1] P-144; Attach. [#104-2] 169; Attach. [#104-3] 171; Attach. [#106-3] 178. The record reflects that DCK recognized the impact Pacifica's project could on its own bottom line and other company projects. *See* Attach. [#77-2] P-48 (Summit email indicating issues with unpaid invoices needs "to be relayed to corporate" because of risk of no future payments from Pacifica); Attach. [#84-2] P-78 (Summit email stating "bank and owner now holding all payments (about $870,000.00 to date) until all liens are released"); Attach. [#92-2] P-103 (DCK internal email discussing budget between Summit, DCK subsidiary, in connection with the Pacifica project); Attach. [#95-1] P-113 (DCK

7

email discussing Summit budget and projects, including the Pacifica project); Attach. [#106-3] P-178 (DCK internal email discussing Pacifica payments and asking "how much dck money would it take to get all finals?").[2]

Based on the foregoing facts, the Court concludes DCK should be bound by Summit's obligations under the Contract on equitable grounds of implied assumption. DCK represented to others that it had taken over the Pacifica project on Summit's behalf. In so doing, DCK secured continued payments that impacted its own budget. Because DCK openly embraced Summit's role under the Contract, DCK must be bound by Summit's obligations under the same.

2. <u>Direct-Benefits Estoppel</u>

"Under 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 362 (5th Cir. 2003) ("Direct benefits estoppel applies when a nonsignatory knowingly exploits the agreement containing the arbitration clause." (internal citations and quotations omitted)). Courts must exercise discretion based on the facts of each case in applying this doctrine. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 135.

The facts of this case also fall within the equitable doctrine of direct-benefits estoppel. The Contract here was between Summit and Pacifica. Summit is a wholly-owned subsidiary of DCK North America, Inc., which itself is a wholly-owned subsidiary of DCK. DCK Br. [#59] at 3. As noted in the section above, DCK actively assumed Summit's role in the Pacifica

---

[2] Summit's responses to post-judgment discovery in the state court case indicate that Summit is now insolvent. *See* Mot. Leave [#116-3] at 5, 13 (indicating no cash in Summit's bank accounts, and stating "Summit dck does not have available funding which it could use to pay Pacifica" if the Final Award is confirmed). These records further reflect DCK's attempt to avoid liability arising from the Pacifica construction project despite its earlier embracing of Summit's role in the same.

8

construction project that is the subject of the Contract. DCK interfaced with Pacifica to obtain substantial project payments in excess of two million dollars under the terms of the Contract. *See* DCK. Br. [#59-3] Ex. C (Contino Decl.) at 2. Pacifica's payments under the Contract are direct benefits. *See MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001) ("benefits must be direct-which is to say, flowing directly from the agreement."). Although these payments were to DCK's indirect subsidiary Summit, DCK's finances were tied to Summit as its ultimate parent. *See Sgic Strategic Glob. Inv. Capital, Inc. v. Burger King Europe GmbH*, 3:14-CV-3300-B, 2015 WL 12731761, at *11 (N.D. Tex. Aug. 26, 2015), aff'd, 839 F.3d 422 (5th Cir. 2016) (finding ownership interest in contracting party constituted a direct benefit for the purposes of direct-benefits estoppel).

DCK knowingly and actively engaged in the Pacifica construction project, effectively assuming Summit's role under the Contract. Pacifica made substantial payments pursuant to the Contract. Under the equitable doctrine of direct benefits estoppel, DCK is estopped from relying on its non-signatory status to avoid the obligation to arbitrate under the Contract. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 135 (Tex. 2005) ("when a nonparty consistently and knowingly insists that others treat it as a party, it cannot later turn its back on the portions of the contract, such as an arbitration clause, that it finds distasteful" (internal quotations and citations omitted)).

### C. Final Award

"Arbitration awards must be confirmed unless statutory grounds exist for vacatur or modification." *Bain v. Bank*, 539 F. App'x. 485, 486 (5th Cir. 2013) (citing 9 U.S.C. § 9). Under the FAA, a district court may vacate an award "where the arbitrators exceeded their powers." *See* 9 U.S.C.A. § 10(a)(4). Arbitrators exceed their power by deciding issues not

properly before them, such as issuing an award against a party not subject to arbitration. *See Elgohary v. Herrera*, 405 S.W.3d 785, 789 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

As noted above, this Court, after an independent review of the record, concludes the arbitrator correctly found DCK should be required to arbitrate under the Contract.[3] Having addressed DCK's only challenge of the Final Award and finding no grounds for vacatur, confirmation of the Final Award is appropriate under 9 U.S.C. § 9. The Court's order today renders Pacifica's counterclaims in this case moot, and therefore this case is now closed.

## Conclusion

Accordingly,

    IT IS ORDERED that Pacifica's Motion to Confirm Arbitration Award and Enter Judgment [#43] is GRANTED and the Final Award is CONFIRMED in its entirety; and

    IT IS FURTHER ORDERED that DCK's Motion to Vacate Arbitration Award [#48] is DENIED;

    IT IS FURTHER ORDERED that DCK's Opposed Motion for Leave to File Out of Time Plaintiff's Response to Defendant's Motion to Compel Arbitration [#21] is DISMISSED as moot;

    IT IS FURTHER ORDERED that Pacifica's Motion to Compel Arbitration in Response [#15] is DISMISSED as moot;

    IT IS FURTHER ORDERED that Pacifica's Motion for Entry of Default [#24] is DENIED; and

    IT IS FINALLY ORDERED that Pacifica's Motion for Leave [##108, 115, 116] are GRANTED.

---

[3] While the analysis in this opinion is limited to the specific issues addressed in the parties' briefing, it is undisputed that the claims addressed in the Final Award are otherwise within the scope of the broad arbitration clause of the Contract. For completeness, the Court incorporates its analysis of the Contract from its earlier preliminary injunction order and notes that the claims submitted to arbitration fall within the plain language of the arbitration clause in the Contract. *See* Order of Jul. 29, 2016 [#29]; Contract at § 13.2 ("For any Claim subject to, but not resolved by mediation . . . the method of binding dispute resolution shall be . . . [a]rbitration . . . ."); *Id.* at § 15.1 (defining Claim as "a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract . . . .").

SIGNED this the 16th day of February 2018.

_____
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE